UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
Roy Beckford,

                        Plaintiff,

   -v-

The City of New York; New York City Police
Department ("NYPD") Police Officer ("P.O.")
Michael Ashford, Shield No. 4887, NYPD Sergeant
("Sgt.") Tarakur Chowdhury, and NYPD P.O.
John and Jane Doe in their individual capacities,

                        Defendants.
------------------------------------------------------------x

COMPLAINT AND DEMAND
FOR A JURY TRIAL

Index No. 17-CV-926

Plaintiff, Roy Beckford, by his attorney David B. Rankin for his complaint, does hereby state and allege:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983.

2. Plaintiff Roy Beckford ("Mr. Beckford")'s rights were violated when officers of the New York City Police Department ("NYPD") unconstitutionally detained and arrested plaintiff despite the absence of probable cause. By reason of defendants' actions, including the unreasonable and unlawful seizure of his person, plaintiff was deprived of his constitutional rights.

3. Plaintiff also seeks an award of compensatory and punitive damages and attorneys' fees.

1

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

5. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) in that plaintiff's claim arose in the Southern District of New York.

6. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

## JURY DEMAND

7. Plaintiff demands a trial by jury in this action on each and every one of his damage claims.

## PARTIES

8. Plaintiff Mr. Beckford is, and was at all times relevant to this action, a resident of the County of Kings in the State of New York.

9. Defendant the City of New York ("City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant City assumes the risks incidental to the maintenance of a police force and police officers as said risks attach to the public consumers of the services provided by the NYPD.

10. NYPD Police Officer Michael Ashford, Shield No. 4887 ("P.O. Ashford"), NYPD Sergeant Tarakur Chowdhury ("Sgt. Chowdhury"), and NYPD P.O. John and Jane Does ("P.O. Does") (referred to collectively as the "individual defendants") are and were at all times relevant herein, officers, employees, and agents of the NYPD.

11. The individual defendants are being sued herein in their individual capacities.

12. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents, and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees, and agents of the NYPD.

13. The individual defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of plaintiff's rights.

14. At all relevant times, the individual defendants were engaged in joint ventures, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

15. The true names and shield numbers of defendants P.O. John and Jane Does are not currently known to the plaintiff. However, they were employees or agents of the NYPD on the date of the incident. Accordingly, they are entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that plaintiff intends to name said officers as defendants in an amended pleading once the true name and shield number of said defendants becomes known and (b) that the Law Department should immediately begin preparing their defenses in this action.

## STATEMENT OF FACTS

16.     On June 21, 2016, Mr. Beckford was in Times Square with a Copwatch Patrol Unit ("CPU").

17.     At approximately 11:00 p.m., Mr. Beckford noticed P.O. Ashford leaning against the wall of Dave & Buster's, located at 234 W. 42nd St., using a personal cell phone.

18.     P.O. Ashford was informed that using his personal cell phone while on duty was a violation of the NYPD Patrol Guide.

19.     Mr. Beckford began filming P.O. Ashford.

20.     P.O. Ashford asked for Mr. Beckford's identification.

21.     P.O. Ashford attempted to not be filmed.

22.     P.O. Ashford was informed there is a right to film police.

23.     P.O. Ashford was asked to call his supervisor.

24.     P.O. Ashford then told Mr. Beckford that he was under arrest.

25.     Mr. Beckford asked what he was being arrested for.

26.     P.O. Ashford said that he was arresting Mr. Beckford for Obstructing Governmental Administration by failing to produce identification.

27.     Mr. Beckford was taken to the Midtown South NYPD Precinct.

28.     At the Midtown South Precinct, officers took Mr. Beckford's phone, which he had used to film the incident, and vouchered it.

29.     At approximately 1:00 a.m. on June 22, 2016, Mr. Beckford was released from the precinct with a Desk Appearance Ticket ("DAT").

30.     Upon release, Mr. Beckford was given back his phone.

31. Outside the precinct, Mr. Beckford checked his phone for his video of his arrest. However, the video was no longer recorded on his phone.

32. Upon information and belief, individual defendants from the Midtown South Precinct deleted Mr. Beckford's video of his arrest from his phone while it was in their possession.

33. Before the return date for his DAT, Mr. Beckford received notice in the mail that his criminal complaint had been dismissed.

34. P.O. Ashford unlawfully detained Mr. Beckford.

35. P.O. Ashford falsely swore Mr. Beckford engaged in "Disorderly Conduct" and "Abusive/Obscene Language."

36. On information and belief, P.O. Ashford forwarded this false information to a prosecutor.

37. Sgt. Chowdhury issued a summons to Mr. Beckford stating that he engaged in "Disorderly Conduct" including "Abusive/Obscene Language."

38. Sgt. Chowdhury knew this was false.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF RIGHTS
## UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. §1983
### (Against the individual defendants)

39. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

40. By their conduct and actions in falsely arresting plaintiff, preventing plaintiff from filming police activity, destroying video evidence, fabricating evidence, abusing criminal process, maliciously prosecuting plaintiff, and by failing to intercede to prevent the complained of conduct, the individual defendants acting under color of law and without lawful justification, intentionally, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's

5

constitutional rights as guaranteed through 42 U.S.C. § 1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments.

41. As a result of the foregoing, plaintiff was deprived of liberty, suffered emotional distress, humiliation, loss of property, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM FOR RELIEF
## *MONELL* CLAIM AGAINST DEFENDANT CITY – 42 U.S.C. § 1983
### (Against the City of New York)

42. Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

43. P.O. Ashford's, Sgt. Chowdhury's, and P.O. John and Jane Doe's acts and omissions described above were carried out pursuant to the City's overlapping customs and practices which were in existence on June 21, 2016 and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the City, its agency, the NYPD, and William Bratton.

44. The acts complained of were carried out by P.O. Ashford, Sgt. Chowdhury, and P.O. John and Jane Doe's in their capacities as police officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

45. The aforementioned custom and practice of the City and the NYPD include, but are not limited to the following:

    a. Making retaliatory arrests against persons who lawfully photograph, document or record police activity;

    b. Arresting persons known to be innocent particularly where such persons are engaged in activity protected by the First Amendment and/or the consent decree Black v. Codd, attached as Exhibit A;

46. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following incidents and civil rights actions filed against the City:

### Journalists and Photographers

a. **May 30, 2007 / Robert Carneval / Carneval v. City of New York, 08 CV 9993 (DAB)(AJP) (S.D.N.Y.)**
A Manhattan photographer, Robert Carneval, was arrested after filming NYPD officers in the East Village as they seized and loaded bikes, which had been locked to lampposts and parking meters, into a police van. After the photographer began filming and discussing the removals with another man, a plainclothes officer asked him for identification. When the photographer stated he had the right to film, the officer led him to a police car, examined his ID, then arrested him. Colin Moynihan, City Settles with Two Arrested After Police Confrontation, The New York Times (March 31, 2010), http://cityroom.blogs.nytimes.com/2010/03/31/city-settles-with-pair-arrested-after-police-confrontation/.

b. **November 2011 / Patrick Hedlund, Paul Lomax, Matthew Lysiak, Karen Matthews, Julie Walker, and Seth Wenig**
In November of 2011, at least six journalists were arrested while covering the raid and eviction of Occupy Wall Street protesters from Zuccotti Park. Thirteen news organizations in New York City lodged complaints about the treatment of journalists and the suppression of coverage of the event, and ten press clubs, unions, and other groups called for an investigation into the police conduct at issue. CBS New York / AP, Several Journalists Among Those Arrested During Zuccotti Park Raid, CBS New York (November 15, 2011), http://newyork.cbslocal.com/2011/11/15/officials-journalists-among-those-arrested-during-zuccotti-park-raid/; Brian Stelter, News Organizations Complain About Treatment During Protests, The New York Times: Media Decoder (November 21, 2011), http://mediadecoder.blogs.nytimes.com/2011/11/21/news-organizations-complain-about-treatment-during-protests/.

c. **November 15, 2011 / Timothy Fitzgerald / Rodriguez v. Winski, 12 CV 3389 (NRB) (S.D.N.Y.)**
On or about November 15, 2011, in Zucotti Park, a publicly accessible open space, several police officers grabbed Timothy Fitzgerald, a citizen reporter who was documenting protest activities and police response to same, pulled him to the ground and arrested him.

d. **November 15, 2011 / Douglas Higginbotham / Higginbotham v. The City of New York, 14 CV 8549 (PKC) (S.D.N.Y.)**

7

On November 15, 2015, Mr. Higginbotham, a freelance video-journalist for TV New Zealand was arrested in retaliation for filming police activity associated with Occupy Wall Street.

e. **March 2012 / Unknown**
In March of 2012, a cameraman from WABC-TV was struck by an officer at crime scene for unknown reasons. Carlos Miller, *NYPD Cop Assaults News Videographer At Crime Scene*, Photography Is Not A Crime (March 22, 2012), http://photographyisnotacrime.com/2012/03/22/nypd-cop-assaults-news-videographer-at-crime-scene/

f. **August 4, 2012 / Robert Stolarik**
Photographer Robert Stolarik, who worked regularly for The New York Times for more than a decade, was charged with obstructing government administration and resisting arrest after taking photographs of a brewing street fight at McClellan Street and Sheridan Avenue in the Bronx. Mr. Stolarik was taking photographs of the arrest of a teenage girl about 10:30 p.m., when a police officer instructed him to stop doing so. Mr. Stolarik said he identified himself as a journalist for The New York Times and continued taking pictures. A second officer appeared, grabbed his camera and "slammed" it into his face, he said. The arresting officer was later indicted for falsifying statements surrounding Ms. Stolarik's arrest. Russ Buettner, *Officer Is Indicted on Charges of Lying About Photographer's Arrest*, The New York Times (Aug. 26, 2013), http://www.nytimes.com/2013/08/27/nyregion/officer-is-indicted-on-charges-of-lying-about-photographers-arrest.html.

g. **September 15-17, 2012 / John Knefel, Charles Meacham, and Julia Reinhart**
Five photojournalists reporting on Occupy Wall Street protesters were arrested in course of their reporting. One photographer was arrested after attempting to take a picture of an officer giving a dispersal order on a sidewalk. Another was forced to the ground and detained, while another was shoved and blocked from taking a photo by a Lieutenant in the NYPD's Legal Bureau. Christopher Robbins, *NYPD's pattern of harassing, arresting journalists continues*, Gothamist (Sep. 19, 2012), http://gothamist.com/2012/09/19/nypds_harassment_of_journalists_con.php.

h. **September 17, 2012 / Christopher Faraone / <u>Faraone v. City of New York et al</u>, 13 CV 09074 (TPG) (S.D.N.Y.)**
Christopher Faraone, a journalist, was photographing a public demonstration at One Chase Manhattan Plaza when NYPD officers tackled, battered and arrested him. One of the officers directed him to cease his reporting activities within New York City.

i. **December 12, 2011 & March 15, 2012 / John Knefel, Paul Sullivan, and Justin Wedes / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB) (S.D.N.Y.)**
On December 12, 2011, Paul Sullivan, John Knefel and Justin Wedes, citizen reporters who were documenting protest activities and police response to same at the Winter Garden, a publicly accessible open place, were grabbed, pulled to the ground

8

and arrested without warning or probable cause by the NYPD. On March 15, 2012, Mr. Wedes was again threatened with arrest for the same legal activity.

j. **November 27, 2012 / Angel Zayas / Zayas v. Kelly, 13 CV 08808 (JMF) (S.D.N.Y.)**
On November 27, 2012, a freelance photographer, Angel Zayas, was arrested for photographing officers effect an unrelated arrest in Grand Central Terminal. Daniel Beekman, *Photographer trying to shoot stop and frisk sues NYC over police harassment*, New York Daily News (Dec. 13, 2013), http://www.nydailynews.com/news/justice-story/photog-shooting-frisking-sues-nyc-harassment-article-1.1546548

k. **January 16, 2013 / Shimon Gifter**
A photographer from VIN News, a media outlet for the Orthodox Jewish community, had his camera seized and thrown to the ground, his memory card erased, and his Blackberry damaged after photographing officers stopping and frisking several young men. The photographer was also handcuffed and held up against a wall before being released with a warning. Boruch Shubert, *Police Brutality in Midwood?*, The Jewish Voice (Jan. 24, 2013), http://jewishvoiceny.com/index.php?option=com_content&view=article&id=2978:police-brutality-in-midwood&catid=106:international&Itemid=289; Sandy Eller, *Charedi Photographer Claims Handcuffed By NYPD After Videotaping Flatbush Police Stop*, Voz Iz Neias? (Jan. 20, 2013), http://www.vosizneias.com/122118/2013/01/20/brooklyn-ny-charedi-photographer-claims-handcuffed-by-nypd-after-videotaping-flatbush-police-stop/.

l. **April 19, 2013 / Justin Thomas / Thomas v. City of New York, 13 CV 6139 (SJ) (LB)(E.D.N.Y.)**
A film student was arrested filming the exterior of the 72nd Precinct on April 19, 2013. Officers confiscated the student's cell phone, camera, and the camera's memory card, as well as his friend's memory card from a camera. Officers failed to remove the correct memory card from the friend's camera, however, leaving evidence of the encounter.

m. **March 16, 2013 / Ed García Conde**
Mr. Conde, a journalist who writes for the Welcome 2 Melrose blog, recorded an interaction between an NPYD officer and a man who the officer believed was violating the open container law. The officer asked Mr. Conde to stop recording, and when he refused, he was given two summonses, one for open container and the other for attempting to create a dangerous situation. Ben Yakas, *Video: Bronx Man Hauled to Jail For Exercising Right to Videotape Cops*, Gothamist (Mar. 16, 2013), http://gothamist.com/2013/03/16/video_bronx_man_hauled_to_jail_for.php

**Concerned Citizens**

n. **February 9, 2005 / Lumumba Bandele, David Floyd, and Djibril Toure / Bandele v. The City of New York, 07 CV 3339 (MGC) (S.D.N.Y.)**

9

Lumumba Bandele, Djibril Toure and David Floyd were arrested while videotaping two arrests in Bedford-Stuyvesant, Brooklyn, on February 9, 2005. "In trying to stop the police from violating the rights of others, they had their rights violated," said Kamau Franklin, a lawyer with the Center for Constitutional Rights. *Metro Briefing: New York; Manhattan: Lawsuit Against The Police*, The New York Times (Apr. 27, 2007), http://query.nytimes.com/gst/fullpage.html?res=9C02E2DD123EF934A15757C0A9619C8B63.

o. **September 29, 2009 / Dennis Flores / Mesa v. City of New York, 09 CV 10464 (JPO) (S.D.N.Y.)**
On September 29, 2009, Dennis Flores was arrested when he photographed NYPD officers using excessive force to disperse a crowd at a festival in the Bronx. At one point prior to Flores' arrest, an NYPD officer stated it was "illegal to photograph police."

p. **October 17, 2010 / Anibal Ortiz / Ortiz v. City of New York, 11 CV 7919 (JMF) (S.D.N.Y.)**
On October 17, 2010, Anibal Ortiz was arrested after he began recording NYPD officers, who asked him for identification, with a cell phone camera.

q. **July 11, 2011 / George Hess and Caroline Stern / Stern v. City of New York, 12 CV 04863 (SAS) (S.D.N.Y)**
On July 11, 2011, Caroline Stern was arrested and her boyfriend George Hess, was tackled and arrested after he began video recording an encounter with officers in a subway station. Kathianne Boniello, *Couple handcuffed, jailed for dancing on subway platform: lawsuit*, The New York Post (July 8, 2012), http://nypost.com/2012/07/08/couple-handcuffed-jailed-for-dancing-on-subway-platform-lawsuit/

r. **January 10, 2012 / Justin Sullivan / Rodriguez v. Winski, 12 CV 3389 (NRB)**
On January 10, 2012, Justin Sullivan was arrested for filming an Occupy Wall Street protest at Grand Central Terminal and his camera was confiscated. Later, Mr. Sullivan returned to the police precinct at the terminal to retrieve his camera and he was re-arrested. A witness reported an officer destroyed Mr. Sullivan's camera.

s. **April 27, 2012 / John Runnells / Runnells v. City of New York, 13 CV 2904 (KBF) (S.D.N.Y.)**
On April 27, 2012, John Runnells' camera was seized and its footage erased after he video recorded a police traffic checkpoint. Mr. Runnells continued recording the officers after his camera was returned, and he was subsequently arrested. Once again, his camera was seized and the footage deleted.

t. **June 5, 2012 / Hadiyah Charles / Charles v. City Of New York, 12 CV 06180 (SLT) (SMG) (E.D.N.Y)**

10

On June 5, 2012 a woman was pushed and arrested for using her phone to video record the stop-and-frisk of three unrelated young men on a public sidewalk. Rocco Parascandola, *Woman suing NYPD for wrongful arrest discovers that a key piece of evidence has mysteriously vanished from the Brooklyn stationhouse*, New York Daily News (Oct.17, 2013), http://www.nydailynews.com/new-york/brooklyn/brooklyn-precinct-log-book-mystery-article-1.1487721

u. **August 2012 / Unknown**
In August of 2012, a man was threatened with arrest for filming outside about 300 feet away from the security checkpoint at One Police Plaza. Carlos Miller, *NYPD Cop Fails at Intimidating Man From Video Recording Police Headquarters*, Photography Is Not A Crime (Aug. 17, 2012),
http://photographyisnotacrime.com/2012/08/17/nypd-cop- fails-at-intimidating-man-from-video- recording-police-headquarters/

v. **September 28, 2012 / Santos Bobet / <u>Bobet v. The City of New York</u>, 14 CV 1396 (WHP)(JLC) (S.D.N.Y)**
On September 28, 2012, at approximately 8:55 p.m., Santos Bobet observed someone being arrested near the Whitlock Avenue 6 Station in the Bronx. After beginning to videotape the arrest, he was arrested by Officer Kelvin Prado, who then along with his partner deleted the video footage.

w. **May 16, 2013 / Christina Gonzalez and Matthew Swaye**
Two Harlem residents were arrested after they filmed NYPD officers conduct stop-and-frisks at a car checkpoint. Christina Gonzalez and Matthew Swaye said they were returning from a Bronx mall at about 10:30 p.m. when they noticed several vehicles stopped and Gonzalez took out her camera to begin filming. Jeff Mays, *'Professional Agitators' on NYPD 'Wanted' Flier Arrested After Filming Stop*, DNA Info (May 21, 2013), http://www.dnainfo.com/new-york/20130521/central-harlem/professional-agitators-on-nypd-wanted-flier-arrested-after-filming-stop

x. **June 5, 2013 / Rahul Saksena / <u>Seksena v. The City of New York</u>, 14 CV 5129 (JBW) (LB) (E.D.N.Y.)**
On June 5, 2014, at approximately 10:00 p.m., Mr. Saksena was arrested in retaliation for filming a civilian police interaction in the Bushwick section of Brooklyn.

y. **August 26, 2013 / Jonathan Harris**
NYPD officers arrested a Bronx teenager, Jonathan Harris, after he was filming the officers attack and threaten two young girls in a Bronx park. The teenager told the officers to leave the girls alone and began filming them with his phone. The officers began chasing him, tackled him and punched him before arresting him. Jennifer Cunningham, *Teens say they were beaten by cops in Bronx park*, New York Daily News (Aug. 29, 2013), http://www.nydailynews.com/new-york/bronx/teens-mauled-cops-article-1.1440394#ixzz2eVh68jgw

z. **September 19, 2013 / Sean Basinski / <u>Basinski v. The City of New York</u>, 14 CV 1057 (LTS) (S.D.N.Y.)**
On September 19, 2013, a lawyer, Sean Basinski was arrested while using a phone to records police during a rally in front of Midtown North Precinct police station on West 54th Street. Colin Moynihan, *Street Vendors Protest Treatment by Police*, The New York Times (Oct. 2, 2013), http://www.nytimes.com/2013/10/03/nyregion/street-vendors-protest-treatment-by-police.html?_r=0

aa. **2013 / Debra Goodman / <u>Goodman v. City of New York</u>, 14 CV 5261 (CM) (S.D.N.Y.)**
Officers arrested Ms. Goodman for filming their interaction with a citizen requiring medical attention. After she began, the officer demanded for her to produce identification, and arrested her when she refused. The New York County District Attorney's Office ultimately dismissed all the charges.

bb. **March 12, 2014 / Jason Disisto / <u>Disisto v. The City of New York</u>, 15 CV 03296 (GHW) (S.D.N.Y.)**
Mr. Disisto was arrested while attempting to film an officer search the bag of an acquaintance. The officers threw the cell phone out of the police vehicle. The entirety of the interaction was capture by a security camera. Natasha Vargas-Cooper, *Video: NYPD Attacks and Arrest Man for Filming a Cop Pawing a Woman*, Jezebel (May 4, 2015), http://jezebel.com/video-nypd-attacks-and-arrests-man-for-filming-a-cop-p-1701890381

cc. **April 2, 2014 / Wajid Kahlil Al-Qadaffi / <u>Al-Qadaffi v. The City of New York</u>, 15-CV-0052 (PAE) (S.D.N.Y)**
On April 2, 2014, Mr. Al-Qadaffi was detained by members of the NYPD in retaliation for recording police activity.

dd. **July 18, 2014 / Ruben An / <u>An v. City of New York</u>, 16 CV 05381 (LGS) (S.D.N.Y.)**
Mr. An observed three NYPD officers questioning another man and began filming the interaction on his cellphone. An officer advised Mr. An to step back and he complied. The officer threatened Mr. An with a disorderly conduct summons and requested identification. Mr. An did not produce identification and continued filming. The officer then twisted Mr. An's arm, confiscated his cellphone, and arrested him for obstruction of governmental administration and disorderly conduct. A jury trial took place and returned a not-guilty verdict on all counts. Nathan Tempey, *Video: Activist Sues City After Cops Arrest Him For Filming*, Gothamist (July 6, 2016), http://gothamist.com/2016/07/06/filming_nypd_lawsuit.php

ee. **September 5, 2014 / Deyan Fang / <u>Fang v. City of New York</u>, 15 CV 04886 (NRB) (S.D.N.Y.)**
Mr. Fang was working as a street vendor selling drawings when the police arrived and asked him for identification. He complied and began recording the incident. The

12

NYPD officers arrested him and charged him with resisting arrest and a statutory violation for standing within ten feet of a crosswalk. The charges were adjourned in contemplation of dismissal. The plaintiff's phone was held by the District Attorney's Office for two months, and when it was returned, the video of the incident had been deleted.

ff. **January 20, 2015 / Joel Delorbe-Bell / Delorbe-Bell v. City of New York, 15 CV 02344 (LGS) (S.D.N.Y.)**
Mr. Delorbe-Bell was a passenger in a car that the NYPD pulled over for tinted windows. Mr. Delorbe-Bell began recording when officers ordered him out of the car, grabbed him by the hand in which he had the phone, searched him, and handcuffed him. He was arrested and charged with disorderly conduct, which was subsequently dismissed at the first court appearance.

gg. **March 29, 2015 / Daniel Teitell / Teitell v. City of New York, 15 CV 4187 (JG) (JO) (E.D.N.Y.)**
Mr. Teitell was arrested filming officers interrogate a man in a public park at night. The officers explicitly told him that they were arresting him rather than giving a citation because he had decided to film them (the citation also would have been unjustified as the park was open to the public at the time).

hh. **July 3, 2015 / Luis Gomez / John v. Demaio, 15 CV 06094 (NGG) (E.D.N.Y.)**
Mr. Gomez was at a barbecue when police arrived and began searching people. Luis Gomez began recording. Officers told him to put the phone away and grabbed him, handcuffed him, and charged him with disorderly conduct. The case was adjourned in contemplation of dismissal.

ii. **August 10, 2015 / Benjamin Beckford / Beckford v. City of New York, 16 CV 02261 (AKH) (S.D.N.Y.)**
Mr. Beckford recorded an incident of police searching his family in front of their home. He was arrested as a result of the filming, and subsequently released, without charges and without any explanation.

jj. **March 14, 2016 / Dennis Flores**
Mr. Flores, founder of the police watchdog group El Grito de Sunset Park, was arrested for jaywalking after filming NYPD Strategic Response Group officers during a protest in the Bronx. *A Week of Crackdowns on Activists and Copwatchers in NYC*, Huffington Post (Mar. 17, 2016) http://www.huffingtonpost.com/josmar-trujillo/a-week-of-crackdowns-on-a_b_9484768.html

kk. **March 16, 2016 / Ramsey Orta**
Ramsey Orta, the man who videotaped the killing of Eric Garner, was arrested in the process of videotaping NYPD officers making an arrest. He was also arrested in February for assaulting his wife, but both Mr. Orta and his wife say this is a lie. According to Mr. Orta, the NYPD has been engaging in a pattern of harassment ever since he filmed Mr. Garner's death in July of 2014. Ben Keller, *NYPD Arrest Ramsey*

*Orta, Man Who Recorded Eric Garner Death, for Recording Too Closely*, Photography Is Not a Crime (Mar. 19, 2016), http://photographyisnotacrime.com/2016/03/19/nypd-arrest-ramsey-orta-man-who-recorded-eric-garner-death-for-recording-too-closely/

ll. **March 17, 2016 / Joseph Hayden and Five Mualimm-ak**
Mr. Hayden and Mr. Mualimm-ak, prisoners' rights and mental health activists, filmed an interaction between two NYPD officers and a homeless man who appeared to be emotionally disturbed. An officer began pushing Hayden, and then placed him in a headlock. Both men were arrested and charged with obstructing governmental administration and disorderly conduct. Victoria Law, *It's 2016 & the NYPD Will Still Arrest You for Filming Them*, Gothamist (Mar. 17, 2016) http://gothamist.com/2016/03/17/nypd_arrest_video_edp.php

mm. **May 20, 2016 / Calvin West**
Mr. West filmed an NYPD officer in the process of an arrest. After the arrest, the officer pointed a loaded gun at and punched Mr. West who filmed the interaction. The officer was placed on modified duty once the video surfaced. *Man Speaks Out After Filming Arrest in Which NYPD Officer Pointed Gun at Him*, Pix11 (May 23, 2016), http://pix11.com/2016/05/23/man-speaks-out-after-filming-arrest-in-which-nypd-officer-pointed-gun-at-him/

nn. **June 11, 2016 / Threstan Ralph**
Mr. Ralph observed five NYPD officers handcuffing a woman and recorded the interaction. An officer arrested him and charged him with disorderly conduct simply for filming the interaction. John Marzulli, *Exclusive: NYPD Accused of Arresting Man for Recording Video of Cops Cuffing Woman*, New York Daily News (June 16, 2016), http://www.nydailynews.com/new-york/nypd-accused-arresting-man-recording-video-cops-article-1.2675620

oo. **June 15, 2016 / David Rivera**
Mr. Rivera was filming an interaction involving NYPD officers taking place in a hallway in his building. The sergeant pointed a gun at him. Then, while Mr. Rivera was standing in his own apartment continuing to film, the sergeant unlawfully entered his apartment and arrested him. The Brooklyn District Attorney's Office declined to prosecute the case. John Marzulli, *See It: Infamous NYPD Sergeant Points Gun at Man Recording Her, Then Busts Into Apartment and Arrests Him*, New York Daily News (June 5, 2016), http://www.nydailynews.com/new-york/brooklyn/nypd-sergeant-aims-gun-man-recording-illegal-search-article-1.2661248?cid=bitly

**Observation of Officers**

pp. **January 2, 2009 / <u>Marrero v. City of New York</u>, 09 CV 7924 (VM) (S.D.N.Y.)**
Mr. Marrero was assaulted and arrested by NYPD officers after he observed them falsely arrest his friend and then announced his intention to file a complaint against said officers.

14

qq. **May 9, 2009 / Jameel Preddie / <u>Preddie v. City Of New York</u>, Index No. 302566/11 (Sup. Ct. Bronx County)**
Numerous NYPD officers beat and then arrested Jameel Preddie after he observed and objected to NYPD officers using excessive force in the course of an arrest of another.

rr. **August 1, 2011 / Alexandra Castillo, Ricardo Hanson, and John Parker / <u>Parker. v. City of New York</u>, 13 CV 3891 (AT) (S.D.N.Y.) and <u>Castillo v. City of New York</u>, 14 CV 3583 (WHP) (S.D.N.Y.)**
Three lifeguards, John Parker, Ricardo Hanson and Alexandra Castillo, leaving work were arrested in Central Park in retaliation for their observation from a reasonable distance of a police investigation of another.

ss. **August 3, 2013 / Nicholas Behncke / <u>Behncke v. City of New York</u>, 14 CV 0009 (ARR) (JO) (E.D.N.Y.)**
NYPD officers arrested Mr. Behncke after he observed another being threatened with arrest inside of a subway station.

tt. **March 17, 2016 / Nuratu Otulana, Channing Tyner, Rachel Levine, Joshua Kristal, and Terrence Slater**
Ms. Otulana, Mr. Tyner, Ms. Levine, Mr. Kristal, and Mr. Slater observed the arrest of Joseph Hayden and Five Mualimm-ak and offered support to their fellow activists. All five were handcuffed and detained for more than two hours before being issued summons for failure to disperse. Victoria Law, *It's 2016 & the NYPD Will Still Arrest You for Filming Them*, Gothamist (Mar. 17, 2016), http://gothamist.com/2016/03/17/nypd_arrest_video_edp.php

47. All of the foregoing acts by defendants deprived the plaintiff of federally protected rights.

48. Defendant City knew or should have known that the acts alleged herein would deprive the plaintiff of their rights, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

49. Defendant City is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the City and NYPD, and to require compliance with the Constitution and laws of the United States.

50. Despite knowledge of such unlawful de facto policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the City, including Commissioner Bratton and Former Commissioner Kelly, did not and have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such policies, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

51. The aforementioned City policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned City policies, practices and/or customs, the individual defendants felt empowered to exercise unreasonable and wholly unprovoked force against plaintiff, arrest plaintiff without probable cause and then fabricate and swear to a false story to cover up their blatant violations of plaintiff's constitutional rights. Pursuant to the aforementioned City policies, practices and/or customs, defendants failed to intervene in or report other defendants' violation of plaintiff's rights or subsequent perjury.

52. Plaintiff's injuries were a direct and proximate result of the defendant City and the NYPD's wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant City and the NYPD to properly supervise, train and discipline their police officers.

53. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of the plaintiffs' constitutional rights.

### THIRD CLAIM FOR RELIEF
### PRIVACY PROTECTION ACT – 42 U.S.C. § 2000aa, *et seq.*
(Against the City of New York)

54. Plaintiff repeats and re-alleges each of the foregoing paragraphs with the same force and effect as if set forth fully herein.

55. One or more of the individual-defendants, while acting within the course and scope of their employment and under color of law, destroyed documentary materials and/or work product materials which the officer-defendants reasonably believed or should have reasonably believed plaintiff intended to use to disseminate the above-described incident to members of the public.

56. As a result, plaintiff was damaged and otherwise harmed as set forth above.

[this section left intentionally blank]

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

a. That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation;

b. That he be awarded punitive damages against the individual defendants;

c. That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d. For such other further and different relief as to the Court may seem just and proper.

Dated:    February 7, 2017
          New York, New York

Respectfully submitted,

By: _____
David B. Rankin
11 Park Place, Suite 914
New York, New York 10007
t: 212-226-4507
e: David@DRMTLaw.com